McDowell *v.* New York Central Rail Road Company.

---

## McDOWELL *vs.* THE NEW YORK CENTRAL RAIL ROAD COMPANY.

Rail road corporations, in order to secure the protection afforded by the 44th section of the general rail road act, from liability for damages done to cattle, horses or other animals, on the track, where they shall erect and maintain fences and cattle-guards of the description therein mentioned, must *keep* their fences and cattle-guards up and in good repair, so that at all times and in all places they shall be of the description and in the condition required, and sufficient to answer the purpose intended.

They must not only erect, but *maintain* the proper fences and cattle-guards. If these are suffered to go to decay, or by accident are broken down so as to allow the passage of cattle &c. through or over them, and are not repaired

within a reasonable time; or if they are opened, and are allowed to remain open unnecessarily, the corporation is liable in damages to the owner of cattle straying upon the track through the opening and there killed.

The statute protects corporations from liability for damages after the fences and cattle-guards are duly made and maintained, only where the damages are not done negligently or willfully. If damages are caused either by the negligence or willfulness of a rail road company, or its agents, the liability is the same as if there had been an entire omission to make fences and cattle-guards.

THIS was an appeal from a judgment given at the circuit, on the verdict of a jury. The action was to recover the value of four head of cattle, which it was alleged came upon the rail road track of the defendant, in the town of Phelps, Ontario county, on or about the 10th day of April, 1856, through the negligence of the company in omitting to maintain fences along the line of its road, as required by the act of April, 1850, (the general rail road act,) and were then and there run upon and over by the defendant's locomotive, and killed. The plaintiff was the owner of three of the cattle, and his sister, Sarah Jane Church, was owner of the other one, and assigned her right of action to him. The defendant denied the charge of negligence, and alleged that the cattle came upon the track of the rail road through the negligence of the owners of the cattle, and not through the negligence or omission of duty on the part of the defendant.

On the trial these facts appeared in evidence. The plaintiff was a farmer, in Phelps. On the 9th of April, 1855, the cattle, which were usually kept in his barn yard, were let out, in the daytime, without his knowledge, to go to a lot on his farm, for water. They strayed from the plaintiff's lot to the next farm north, owned by one Dennison, through a breach in the partition fence. This breach was in the plaintiff's part of the fence, but was caused by the fall of a tree cut by Dennison. Dennison's people turned the cattle into the highway, along which they strayed to one Nicholson's farm, adjoining the plaintiff's, on the south; and Nicholson's fence being down, they went across his premises to the rail road,

McDowell *v.* New York Central Rail Road Company.

where they were killed, in the afternoon of the same day. At the point where the cattle went from Nicholson's farm upon the rail road, the fence had been taken down by Nicholson, in January or February, to draw wood which he had contracted to deliver to the defendant. Nicholson finished drawing wood about a week before the accident, and the defendant's track master (Page), whose duty it was to keep up the fences, knew that the fence was down, before the cattle were killed.

The jury, under the direction of the court, rendered a verdict for the plaintiff.

. The defendant excepted to various rulings of the judge, and appealed from the judgment.

*H. R. Selden,* for the appellant.

*Jas. C. Smith,* for the respondent.

*By the Court,* WELLES, J. By the 44th section of the general rail road act, (*Laws of* 1850, *p.* 233,) rail road corporations are required not only to erect, but to *maintain,* fences on the sides of their roads, and cattle-guards of the description mentioned in that section, which declares that until such fences and cattle-guards shall be duly made, the corporation and its agents shall be liable for all damages which shall be done by their agents or engines, to cattle, horses or other animals thereon ; and that after such fences and guards shall be duly made and *maintained,* the corporation shall not be liable for any such damages unless negligently or willfully done, &c.

In this case fences and cattle-guards had been erected on that section of the defendant's road where the plaintiff's, and his sister's, cattle were killed, on the 9th day of April, 1855. But in January or February previous, the rail road fence had been taken down, in two or more places, for the purpose of allowing teams and carriages to pass and repass, which were

delivering wood to the defendant, and were permitted to re-main down until after the accident occurred. It was through one of these openings in the fence that the cattle strayed from an adjoining field into the rail road, and upon the track where they were struck by the train and killed.

The section of the act, referred to, was intended, among other things, in the first place, to require rail road corpora-tions in operation, which had not inclosed their roads with sufficient fences, as well as such as were in process of con-struction, or to be thereafter constructed, to erect fences and cattle-guards such as the section specifies, under the penalty of paying all damages which should be done by their agents or engines to cattle, horses or other animals thereon; in the second place, to require such corporations to *maintain* such fences and cattle-guards, under the like penalty; and in the third place, to protect the corporations from liability for such damages, after the required fences and cattle-guards should be erected, *and while they should be maintained,* unless negligently or willfully committed by them or their agents. In order, therefore, to secure such protection, the corporations must keep their fences and cattle-guards up and in good re-pair, so as at all times and in all places, on their roads, they shall be of the description and in the condition required, and sufficient to answer the purpose intended. If they are suf-fered to go to decay and dilapidation, or by any unavoidable accident they are broken down so as to allow domestic ani-mals to pass over or through them, without obstruction, and are not repaired within a reasonable time, and especially if they are opened with or without the consent of the corpora-tions or their agents, and are allowed to remain open for weeks or months, it cannot be said that they are *maintained.*

With this view of the construction of the statute, which, it seems to me, is the just and reasonable one, the case is within the principle of *Corwin* v. *The New York and Erie Rail Road Company,* (3 *Kern.* 42,) and sustains the recov-ery and judgment therein.

Besides, the same section of the act secures the corporations against liability for damages &c. after the fences and cattle-guards are duly made and maintained, only where the damages are not negligently or willfully done. If the damages are produced either by the negligence or willfulness of the corporation or its agents, the liability is the same as if there had been an entire omission to make the fences and cattle-guards. Upon this ground, also, I think the recovery in the present case can be sustained ; as it cannot be doubted that to leave an opening in the fence through a cultivated farm, during the space of time the evidence shows was done here, was clear and palpable negligence, and in consequence whereof the plaintiff's cattle were killed.

These views lead to the affirmance of the judgment.

Ordered accordingly.

[MONROE GENERAL TERM, March 3, 1862. *Welles, E. Darwin Smith* and *Johnson,* Justices.]